UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ANDREW E. DIAZ,

        Plaintiff,

        v.                                    Case No. 25-cv-1908-bhl

NP GINGER B. RANDOLPH,
KRISTIN A. VASQUEZ,
WARDEN ROBERT MILLER, and
RACINE CORRECTIONAL INSTITUTION,

        Defendants.

---

## SCREENING ORDER

---

        Plaintiff Andrew Diaz, who is currently serving a state prison sentence at the Racine Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Diaz's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

        Diaz has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Diaz has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $19.58. Diaz's motion for leave to proceed without prepaying the filing fee will be granted.

### SCREENING OF THE COMPLAINT

        The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a

complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Diaz explains that he has been dealing with severe back pain since 2017, when he injured his back while unloading boxes at the Waupun Correctional Institution. He has had multiple MRIs, been prescribed numerous medications, and been sent to a pain specialist in an effort to relieve the pain. He asserts that nothing other than a one-month prescription for a narcotic has been effective. Diaz states that recommendations that he be prescribed a long-term narcotic have been rejected. Instead, he has been prescribed numerous ineffective medications, many of which have had severe side effects, including nausea, painful urination, extreme fatigue, confusion, dizziness, and blackouts. Diaz explains that as soon as he would report a serious side effect to the prescribing provider, the prescription would be cancelled.

In 2025, Diaz was transferred to Racine Correctional Institution where he began to be seen by Nurse Practitioner Ginger Rudolph. According to Diaz, he explained to her all that he had been through regarding failed treatments for his back pain. He asked her to make a second request that he be allowed a permanent narcotic prescription since the earlier short-term prescription was

2

effective. About a month later, NP Rudolph informed Diaz that she had located a medication that he had not yet tried. The medication is primarily used for epilepsy but has shown some effectiveness with treating nerve pain in the face. Diaz asserts that within three days of taking the first pill, he began to experience bad side effects, including nausea, dizziness, and blacking out. Diaz explains that this medication is related to two others that he was immediately taken off of after experiencing similar side effects. He notes that, although NP Randolph was aware of this history, she opted to lower the dosage rather than take him off the medication. He states that about two weeks later, he vomited twice and blacked out twice. Diaz asserts that he informed the health services unit, but he received no response.

On June 17, 2025, while at work, Diaz blacked out. He states that he hit his head on a branch and had to be rushed to the hospital. He states that his scalp was reattached with five staples, and he is now disfigured and cannot see out of his left eye. He states that none of this would have happened if NP Rudolph, like every provider before her, had immediately cancelled the prescription after he reported significant side effects.

### THE COURT'S ANALYSIS

Diaz asserts that NP Rudolph violated the Eighth Amendment when she did not adequately respond to his complaints of significant side effects after he began taking a new medication. "[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)). Importantly, a mistaken belief in regards to medical treatment does not equate to deliberate indifference. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) ("[W]ithout more, a mistake in professional judgment cannot be deliberate indifference."); *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996) ("[A] defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.").

Diaz states a claim against NP Rudolph based on allegations that she persisted with a medication that she knew posed a serious risk of harm to Diaz. It may be that her decision to lower

3

the dosage rather than cancel the medication was only an error in judgment, which would be insufficient to support an Eighth Amendment claim. However, at this early stage and in light of Diaz's allegations that his reports of experiencing side effects after the change in dosage were ignored, further development of the record is necessary to determine whether NP Rudolph's decision not to cancel the medication rises to the level of an Eighth Amendment constitutional violation.

Diaz does not, however, state a claim against Health Services Manager Kristin Vasquez or Warden Robert Miller. The complaint contains no allegations explaining what Diaz believes these individuals did or did not do to violate his rights. To the extent Diaz sued them because they are supervisors, the Court advises Diaz that the doctrine of respondeat superior cannot be used to hold a supervisor liable for the misconduct of a subordinate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Finally, the Racine Correctional Institution is not a "person" under §1983, so it cannot be sued. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

**IT IS THEREFORE ORDERED** that Diaz's motion for leave to proceed *in foma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Diaz does not state a claim against Kristin Vasquez or Robert Miller and that Racine Correctional Institution cannot be sued under §1983, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Diaz's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on NP Ginger B. Randolph.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, NP Ginger Randolph shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Diaz is located.

**IT IS FURTHER ORDERED** that the agency having custody of Diaz shall collect from his institution trust account the $330.42 balance of the filing fee by collecting monthly payments from Diaz's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments

shall be clearly identified by the case name and number assigned to this action. If Diaz is transferred to another institution, the transferring institution shall forward a copy of this Order along with Diaz's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Diaz is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 20th day of January, 2026.

> *s/ Brett H. Ludwig*
> BRETT H. LUDWIG
> United States District Judge